**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

|  |  |  |
|---|---|---|
| _____ | ) | |
| MICHAEL HAYES, | ) | |
|  | ) | |
| Plaintiff, | ) | |
|  | ) | |
|  | ) | Civil Action No. 1:24-CV-12291-AK |
| v. | ) | |
|  | ) | |
| UNITED STATES OF AMERICA, | ) | |
|  | ) | |
| Defendant. | ) | |
| _____ | ) | |

**MEMORANDUM AND ORDER ON DEFENDANT'S MOTION TO DISMISS**

**KELLEY, D.J.**

Plaintiff Michael Hayes ("Plaintiff" or "Hayes"), proceeding *pro se*, is suing the United States of America ("Defendant" or "the government") for abuse of process; intentional infliction of emotional distress; negligence; conspiracy; and negligent supervision, negligent retention, negligent discipline, and failure to train. The government moves to dismiss on several grounds. For following reasons, the government's Motion to Dismiss is **GRANTED** and the case is **DISMISSED WITH PREJUDICE**.

**I.      FACTUAL BACKGROUND**

Unless stated otherwise, all facts are drawn from Plaintiff's Amended Complaint. [Dkt. 27]. At the motion to dismiss stage, the court evaluates the case in the light most favorable to the plaintiff, accepting all of the plaintiff's well-pleaded factual allegations as true and drawing all reasonable inferences in the plaintiff's favor. Trans-Spec Truck Serv., Inc. v. Caterpillar, Inc., 524 F.3d 315, 320 (1st Cir. 2008).

At some point prior to March 28, 2019, Hayes communicated on a messaging site,

1

Discord, with a user named "Torhackr." [Dkt. 27 ¶¶ 1-2]. Hayes solicited Torhackr to hack the accounts of three women. [Id. ¶ 2]. Instead of hacking the accounts as agreed, Torhackr warned the potential victims about the online hacking scheme and encouraged them to seek restraining orders against Hayes. [Id. ¶¶ 4-7]. At that point, Hayes suspected that Torhackr was an undercover agent with the Federal Bureau of Investigation ("FBI"). [Id. ¶¶ 8-10].

Hayes claims that this undercover FBI agent provided information to the Somerville and Wilmington police departments concerning Hayes' messages to the Torhackr account. He alleges that a search warrant was obtained, in part, based on information from the undercover agent. [Id. ¶¶ 12, 17]. Hayes further contends that the search warrant should not have been issued because the agent failed to follow proper undercover operation protocols, including the failure to identify himself as a law enforcement officer. [Id. ¶ 18]. Hayes asserts that Torhackr is an undercover FBI agent named Christopher Steffen who conspired with an unknown supervisor, two state court Assistant District Attorneys, and various members of the Somerville and Wilmington police departments to "circumvent" the "checks and balances of the Court System" by withholding his status as an undercover FBI agent. [Id. at 26].

Hayes was arrested in December 2019 by the Somerville and Wilmington police departments for violating a harassment prevention order. [Id. ¶ 16]. That same day, a search warrant was executed at Hayes' parents' home. [Id.]. Search warrants were also issued for Hayes' Discord account and his electronic devices. [Id. ¶¶ 9, 12].

Over the next several years, Hayes attempted to learn additional personal details about the individual he believed to be an undercover agent and tried to alert various law enforcement agencies about the agent's violation of his constitutional rights. [Id. ¶¶ 19, 43-44, 46-47, 57]. Hayes asserts that during his criminal trial, the agent, Christopher Steffen, testified in disguise

2

wearing makeup, a wig, and oversized clothes. [Id. ¶ 80]. According to Hayes, this disguise is similar to what an undercover FBI agent would wear to testify in court. [Id. ¶¶ 34, 79-80, 89].

Finally, Hayes asserts that he filed a Federal Tort Claims Act ("FTCA") administrative tort claim with the FBI on June 1, 2024, and that the FBI denied his claim on August 7, 2024. [Id. at 29]. Hayes now brings several claims under the FTCA for the distress he endured because of the agent's unlawful tactics and the government's complicity in the scheme. [Id.].

## II.      PROCEDURAL BACKGROUND

In September 2024, Hayes filed claims against FBI Agent John Doe a/k/a Christopher Steffen, FBI Director Christopher Wray, and the FBI, alleging violations of his Fourth and Sixth Amendment rights, obstruction of justice, intentional infliction of emotional distress, and conspiracy, as well as "negligent supervision, failure to train, supervise, discipline, retention, and failure to prevent deprivation of Mr. Hayes constitutional rights." [Dkt. 1 ¶ 1]. In March 2025, the Court granted leave for Hayes to file an amended complaint, noting that otherwise the action would be dismissed because the complaint failed to state a claim upon which relief could be granted. [Dkt. 15 at 3].

To cure the pleading deficiencies, Hayes filed an Amended Complaint in April 2025, naming the United States of America as the Defendant. [Dkt. 21]. The FBI, John Doe a/k/a Christopher Steffen, and Christopher Wray were removed as Defendants when Hayes amended his complaint. [Id.]. In July 2025, Hayes filed a Second Amended Complaint, and the Court ordered the issuance of summons. [Dkts. 26, 27]. The U.S. Marshals Service served the government via the U.S. Attorney for the District of Massachusetts in September 2025. [Dkt. 31].

Due to a lapse in appropriations for the federal government preventing the government from filing a response, the case was stayed from October 15, 2025, to November 24, 2025. [Dkts. 33, 37]. In December 2025, the government moved to dismiss on several grounds. [Dkt. 39].

3

Shortly after, Hayes filed an opposition to the government's motion. [Dkt. 41].  The government did not file a reply.

## III.  LEGAL STANDARD

The government moves to dismiss pursuant to Rules 12(b)(1) for lack of subject matter jurisdiction, 12(b)(5) for insufficient service of process, and 12(b)(6) for failure to state a claim. The Court sets forth the legal standard under each section below.

## IV.  DISCUSSION

The government seeks dismissal of Hayes' complaint for several reasons: (1) Hayes did not timely exhaust administrative remedies as required under the FTCA; (2) Hayes failed to serve the Attorney General with the Amended Complaint; (3) the complaint does not state a claim upon which relief can be granted; and (4) the claims are barred under the substantiality doctrine.

As an initial matter, Hayes' Second Amended Complaint must be dismissed because he did not exhaust administrative remedies, the United States has not waived sovereign immunity, and the claims arise from a valid criminal conviction.  Even if he were to succeed on these threshold issues, he brings several claims—abuse of process, intentional infliction of emotional distress, civil conspiracy, negligence, negligent supervision, negligent retention, and failure to train—all of which fail as a matter of law.  Furthermore, Plaintiff also requests an award of attorney's fees.  However, Hayes is proceeding *pro se* and has not retained counsel, so he is not entitled to recover attorney's fees.

### A.     Rule 12(b)(1): Lack of Subject Matter Jurisdiction

The standard of review for a motion to dismiss for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) is "similar to that accorded a dismissal for failure to state a claim pursuant to" Federal Rule of Civil Procedure 12(b)(6). Murphy v. United States,

4

45 F.3d 520, 522 (1st Cir. 1995). That is, when "a district court considers a Rule 12(b)(1) motion, it must credit the plaintiff's well-pled factual allegations and draw all reasonable inferences in the plaintiff's favor." Merlonghi v. United States, 620 F.3d 50, 54 (1st Cir. 2010). The party "invoking the jurisdiction of a federal court carries the burden of proving its existence," and a "plaintiff cannot rest a jurisdictional basis merely on unsupported conclusions or interpretations of law." Johansen v. United States, 506 F.3d 65, 68 (1st Cir. 2007) (internal quotation marks and citations omitted). The court's subject matter jurisdiction "must be apparent from the face of the plaintiff's pleading." Id.

Here, the government argues that Hayes' claims are barred by the substantiality doctrine because his claims are too insubstantial to give rise to the court's subject matter jurisdiction. Hagans v. Lavine, 415 U.S. 528, 536-37 (1974) ("[F]ederal courts are without power to entertain claims otherwise within their jurisdiction if they are so attenuated and unsubstantial as to be absolutely devoid of merit, wholly insubstantial, obviously frivolous, plainly unsubstantial, or no longer open to discussion.") (internal quotations omitted). In response, Hayes argues that the case should be allowed to continue because the bar for dismissing a claim for frivolousness is very high, and the Court already allowed it to move past the screening stage for prisoner suits under 28 U.S.C. § 1915A. [Dkt. 41 at 9]. Section 1915A authorizes the court to review, "as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity." 28 U.S.C. § 1915A. The court may dismiss any portion of the complaint that fails to state a claim, is frivolous, malicious, or seeks monetary relief from an immune defendant. 28 U.S.C. § 1915A.

Irrespective of the substantiality doctrine, the Court does not have subject matter jurisdiction because Plaintiff has failed to timely exhaust his administrative remedies. A plaintiff

may not bring an FTCA action against the United States unless (1) the plaintiff has first presented the claim to the appropriate federal agency whose employees are allegedly responsible for the plaintiff's injury, and (2) that agency has "final denial" of the plaintiff's claim. 28 U.S.C. § 2401(b).  The plaintiff must present this claim "within two years after such claim accrues" or the claim "shall be forever barred." Id.; Gonzalez v. United States, 284 F.3d 281, 288 (1st Cir. 2002) ("[I]t is well-settled that an FTCA claim must be dismissed if a plaintiff fails to file a timely administrative claim.").

Generally, the statute of limitations begins to accrue at the time of the plaintiff's injury. Gonzalez, 284 F.3d at 288.  Here, Hayes sent a letter to Christopher Steffen in March 2022, complaining of the conduct underlying the claims at issue in this suit. [Dkt. 27 at 12].  Thus, Hayes knew of the factual basis of his claims by March 2022 at the latest, giving Hayes until approximately March 2024 to timely present his claim. [Dkt. 41 at 6].  However, Hayes did not present his claim to the FBI until June 2024, three months after the limitations period ended. [Dkt. 41 at 6].  He filed his initial Complaint in September 2024. [Dkt. 1].  Pursuant to the FTCA, Hayes was required to submit his claim to the FBI by March 2024 and within six months of the FBI's final written denial, file a Complaint in Federal Court.  28 U.S.C. § 2401(b).  Thus, he did not timely exhaust his administrative remedies under the FTCA.

Hayes concedes that this timeline is accurate but argues that exceptions to the administrative exhaustion rule should apply here: namely, the fraudulent concealment doctrine, the discovery rule, and the equitable tolling doctrine. [Dkt. 41 at 11].  The Court addresses each argument in turn.

### 1.  Fraudulent Concealment Doctrine

Under the fraudulent concealment doctrine, the statute of limitations is tolled "where a

plaintiff has been injured by fraud and remains in ignorance of it without any fault or want of diligence or care on his part." Gonzalez v. United States, 284 F.3d 281, 292 (1st Cir. 2002) (citations and internal quotations omitted).  Here, even if the Defendant engaged in fraudulent concealment, Hayes knew of the factual basis of his claims by March 2022 at the latest, giving him until approximately March 2024 to timely present his claims. [Dkt. 41 at 6].  He did not. Therefore, the fraudulent concealment doctrine does not toll the statute of limitations here.  The Court next addresses the discovery rule.

### 2.  Discovery Rule

Like the doctrine of fraudulent concealment, the discovery rule is a means available to plaintiffs seeking to toll the statute of limitations.  Under the discovery rule, "the plaintiff's claim accrues when she knows both the existence and the cause of [her] injury." Callahan v. United States, 426 F.3d 444, 451 (1st Cir. 2005).  In an FTCA case, a plaintiff's claim accrues only when she also knows that there is a causal connection between the government and her injury. Callahan, 426 F.3d at 451 (internal citations omitted).  At this juncture, Hayes' arguments fail because he was aware of both the existence and the cause of his injury by at least March 2022, more than two years before he initiated this suit in September 2024.  Therefore, the discovery rule does not toll the statute of limitations.  The Court next addresses equitable tolling.

### 3.  Equitable Tolling

Generally, the doctrine of equitable tolling "is available in exceptional circumstances to extend the statute of limitations . . . .  For equitable tolling to apply, the plaintiff must show that circumstances beyond their control precluded a timely filing.  However, equitable tolling is sparsely applied and cannot be used to rescue a plaintiff from their lack of diligence." Foss v. E. States Exposition, 149 F.4th 102, 112 (1st Cir. 2025) (citations, internal quotations, and brackets

omitted).  The Supreme Court has held that the equitable tolling doctrine can be applied in the FTCA context.  See United States v. Kwai Fun Wong, 575 U.S. 402, 412 (2015) ("The time limits in the FTCA are just time limits, nothing more.  Even though they govern litigation against the Government, a court can toll them on equitable grounds.")

To support his equitable tolling argument, Hayes appears to argue that the public defender in his criminal case advised him against filing a civil lawsuit until after his criminal case had concluded. [Dkt. 41 at 12].  However, Hayes could have chosen to disregard his counsel's advice and file a lawsuit.  And instead, he could have preserved his claims under the FTCA by submitting an administrative complaint to the FBI within the statute of limitations period.  He did not.  Hayes' decision not to file an administrative complaint and his counsel's advice to delay bringing a complaint until his criminal case was resolved does not show that Plaintiff faced circumstances beyond his control that precluded a timely filing.  Thus, the equitable tolling doctrine does not apply.

Because Hayes did not timely exhaust his administrative remedies under the FTCA and no exception to the rule applies, the Court does not have subject matter jurisdiction over this action.

### 4.  Sovereign Immunity

The Court also lacks subject matter jurisdiction over this action because even if Hayes had properly exhausted his administrative remedies, his claims are barred by sovereign immunity.  "Absent a waiver, sovereign immunity shields the Federal Government" from suit. FDIC v. Meyer, 510 U.S. 471, 475 (1994).  Although the FTCA waives sovereign immunity for certain tort claims against the United States, that waiver is limited and subject to several statutory exceptions. See 28 U.S.C. § 1346(b); Limone v. United States, 579 F.3d 79, 88 (1st Cir. 2009).

One such limitation is the discretionary function exception.  The exception provides that the United States retains sovereign immunity for claims "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty" by a federal agency or employee, "*whether or not the discretion involved be abused*." 28 U.S.C. § 2680(a) (emphasis added).  When the discretionary function exception applies, the court lacks subject matter jurisdiction over the claim. Kelley v. United States, 924 F.2d 355, 360 (1st Cir. 1991).

Here, Hayes seeks to hold the United States liable for negligence, negligent supervision, and failure to train arising from the actions of an undercover federal agent during a criminal investigation.  Decisions concerning the hiring, training, supervision, and management of federal law enforcement personnel are discretionary functions protected by § 2680(a).  Even if this discretion was abused, as Hayes argues it was, the discretionary function exception renders the United States immune from suit.  Accordingly, these claims fall squarely within the discretionary function exception, and sovereign immunity has not been waived.  For these reasons, Hayes' claims must be dismissed.  For completeness the Court next addresses the government's insufficient service of process argument.

### B.    Rule 12(b)(5): Insufficient Service of Process

The government also moves to dismiss under Rule 12(b)(5), arguing that although Hayes served the U.S. Attorney with the Second Amended Complaint, he failed to serve the Attorney General. [Dkt. 40 at 9].  The plaintiff bears "the burden of proving proper service" when the sufficiency of process is challenged under Rule 12(b)(5). Rivera-Lopez v. Municipality of Dorado, 979 F.2d 885, 887 (1st Cir. 1992).  The court may consider the return of service, affidavits submitted by the parties, and testimony or other evidence adduced at an evidentiary hearing to resolve the motion. Id.

On June 17, 2026, the Court issued an e-order noting that service on the government was complete on September 5, 2026 (i.e., when the U.S. Attorney's Office was served). [Dkts. 47, 31]. However, this order was made in error. The Court inaccurately interpreted the return of service for the U.S. Attorney's Office as service for the U.S. Attorney General's Office, when, in fact, only the U.S. Attorney's Office had been served.

A plaintiff suing the United States must serve both the U.S. Attorney and the Attorney General. Fed. R. Civ. P. 4(i)(1). See, e.g., Kinuthia v. Biden, 2022 U.S. Dist. LEXIS 108899, at *17 (D. Mass. 2022) ("[T]he requirement that plaintiff serve the USAO-MA under Rule 4(i)(1)(A) . . . is separate from the requirement that he serve the AG under Rule 4(i)(1)(B).").

If a plaintiff "shows good cause" for failure to serve within a specified time, "the court must extend the time for service for an appropriate period." Fed. R. Civ. P. 4(m). In the First Circuit, "[a] plaintiff proceeding IFP shows good cause when . . . the United States Marshals Service fails to fulfill its obligations." Laurence v. Wall, 551 F.3d 92, 94 (1st Cir. 2008).

Hayes, who is proceeding *in forma pauperis*, relied on the U.S. Marshals Service to properly serve the Second Amended Complaint to all required parties. Thus, the cure for deficient service is an extension of time. However, the Court declines to grant Hayes an extension to cure the service defects because doing so would be futile as the case is dismissed on independent grounds. See, e.g., Sullivan v. F.C.C., No. 01-CV-10369, 2001 WL 1819398, at *2 (D. Mass. Oct. 25, 2001) (where pro se plaintiff failed to deliver a copy of the summons to the U.S. Attorney or the Attorney General as required by Rule 4, case was nonetheless dismissed on other grounds without granting extension to cure service deficiencies).

For purposes of this Order, the Court assumes that Hayes could have and would have

cured the defect in service and therefore proceeds to address Defendants' Motion to Dismiss on the merits. The Court next addresses the government's failure to state a claim argument.

### C.    Rule 12(b)(6): Failure to State a Claim

The Court next addresses failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must allege sufficient facts to state a claim for relief that is "plausible on its face" and actionable as a matter of law. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). Reading the complaint "as a whole," the court must conduct a two-step, context-specific inquiry. García-Catalán v. United States, 734 F.3d 100, 103 (1st Cir. 2013). First, the court must perform a close reading of the complaint to distinguish factual allegations from conclusory legal statements. Id. Factual allegations must be accepted as true, while legal conclusions are not entitled to credit. Id. A court may not disregard properly pleaded factual allegations even if actual proof of those facts is improbable. Ocasio-Hernández v. Fortuño-Burset, 640 F.3d 1, 12 (1st Cir. 2011). Second, the court must determine whether the factual allegations present a "reasonable inference that the defendant is liable for the misconduct alleged." Haley v. City of Boston, 657 F.3d 39, 46 (1st Cir. 2011) (citation omitted). Dismissal is appropriate when the complaint fails to allege a "plausible entitlement to relief." Rodriguez-Ortiz v. Margo Caribe, Inc., 490 F.3d 92, 95 (1st Cir. 2007) (quoting Twombly, 550 U.S. at 559).

Hayes fails to state a claim upon which relief can be granted. The claims must be dismissed for several independent reasons: (i) the claims arise from a valid criminal conviction, (ii) Plaintiff has not pleaded a viable Bivens claim, and (iii) the claims fail on the merits as a matter of law.

11

## 1.  Claims Arise from a Valid Criminal Conviction

Hayes' Second Amended Complaint expressly acknowledges that he was convicted by a jury. [Dkt. 41 at 6].  His claims for abuse of process, intentional infliction of emotional distress, and civil conspiracy are all predicated on the allegation that his conviction was obtained through fraud on the court, fabricated or unconstitutional evidence, and other unlawful conduct by government officials.  A judgment in Hayes' favor on those allegations would necessarily call into question the validity of his criminal conviction.

In Heck v. Humphrey, the Supreme Court made clear that a plaintiff may not recover damages for an allegedly unconstitutional conviction or imprisonment, or for other injuries caused by actions whose unlawfulness would necessarily render the conviction or sentence invalid, unless the conviction or sentence has already been invalidated. 512 U.S. 477, 486-87 (1994).  Instead, a plaintiff must first show that the conviction has been reversed on direct appeal, expunged by executive order, declared invalid by an authorized tribunal, or called into question through a federal writ of habeas corpus. Id.  The rule prevents civil actions from becoming a vehicle for collaterally attacking an outstanding criminal conviction.  If Hayes believes his conviction was obtained unlawfully, the proper course is to challenge the conviction through the criminal appellate process or habeas proceedings before seeking damages in a civil action.

Here, Hayes does not allege that his conviction has been reversed, vacated, or otherwise invalidated.  Because success on his claims would necessarily imply that his conviction was unlawfully obtained and is therefore invalid, Plaintiff's claims are barred by Heck.

## 2.  Bivens Claims

Although Hayes does not expressly invoke Bivens v. Six Unknown Federal Narcotic

Agents, 403 U.S. 388 (1971), the Court construes his *pro se* complaint liberally and considers whether it could plausibly be read to assert individual-capacity constitutional claims against the undercover FBI agent.  Even under that generous construction, Plaintiff fails to state a cognizable Bivens claim.

First, a Bivens action may be maintained only against an individual federal officer acting in his or her individual capacity; it cannot be brought against the United States or its agencies. See FDIC v. Meyer, 510 U.S. 471, 484–86 (1994).  In the operative Second Amended Complaint, Hayes names only the United States as a defendant.

Second, even if Hayes had named the undercover FBI agent in his individual capacity, as he did in his original Complaint, any constitutional claim challenging the validity of the investigation, prosecution, or resulting conviction would likewise be barred by Heck because success on such a claim would necessarily imply the invalidity of Hayes' criminal conviction.

Third, the Supreme Court has repeatedly emphasized that expanding Bivens remedies beyond the narrow circumstances previously recognized is a "disfavored judicial activity." Egbert v. Boule, 596 U.S. 482, 491 (2022).  Indeed, in the decades since recognizing implied constitutional damages remedies in a handful of cases, courts have "consistently rebuffed" requests to extend Bivens to new factual settings. Mays v. Smith, 70 F.4th 198, 202 (4th Cir. 2023) (quoting Tate v. Harmon, 54 F.4th 839, 843 (4th Cir. 2022)); see also Evans v. United States, No. 24-40300, 2025 WL 655799, at *3 (5th Cir. Feb. 28, 2025).

Determining whether a Bivens remedy exists requires a two-step inquiry.  First, the Court asks whether the plaintiff's claim arises in a "new context"—that is, whether it differs in a meaningful way from the three contexts in which the Supreme Court has previously recognized a Bivens remedy. See Ziglar v. Abbasi, 582 U.S. 120, 139–40 (2017) (discussing the three cases at

13

length).  Differences may include the constitutional right asserted, the type of officer involved, the nature of the official conduct, the statutory framework governing that conduct, the degree of judicial guidance available, or the risk that recognizing a damages remedy would intrude upon the responsibilities of the political branches. Id.

If the claim presents a new context, the Court proceeds to the second step and asks whether there are any "special factors" to consider before imposing a damages remedy. Egbert, 596 U.S. at 492.  The inquiry is narrow: if there is a rational reason to think Congress, rather than the judiciary, is better suited to decide whether a damages remedy should exist, the court may not extend Bivens. Id. at 496; Hernandez v. Causey, 124 F.4th 325, 333 (5th Cir. 2024), cert. denied, 145 S. Ct. 1930 (2025).

Here, Hayes' allegations arise from an undercover FBI investigation, the conduct of federal law enforcement officers during a criminal investigation, and decisions concerning investigative techniques and prosecution.  The Supreme Court has never recognized a Bivens remedy in that context.  Extending Bivens to these allegations would therefore require the Court to recognize a new cause of action in an area involving federal law enforcement operations and criminal investigations, which is precisely the type of expansion the Supreme Court has firmly declined to permit.  See Egbert, 596 U.S. at 492.  Moreover, the regulation of federal investigative practices and the availability of damages remedies against federal officers are matters that Congress is better positioned to address.  See Ziglar v. Abbasi, 582 U.S. at136 (explaining the legislature is in a better position to consider whether the public interest would be served in creating new substantive legal liability).  Accordingly, even liberally construing the Second Amended Complaint considering Hayes' *pro se* status, Plaintiff fails to state a viable Bivens claim.

### 3.  Claims Fail as a Matter of Law

Plaintiff brings several claims—abuse of process, intentional infliction of emotional distress, civil conspiracy, negligence, negligent supervision, negligent retention, and failure to train—all of which fail as a matter of law.

### a.        Abuse of Process

Abuse of process occurs when someone uses a legal procedure for a purpose that the law never intended. Children's Hosp. Corp. v. Cakir, 183 F. Supp. 3d 242, 249 (D. Mass. 2016).  To prevail, a plaintiff must show that legal process was used "to accomplish some ulterior purpose for which it was not designed or intended, or which was not the legitimate purpose of the particular process employed." Millennium Equity Holdings, LLC v. Mahlowitz, 925 N.E. 2d 513, 522(Mass. 2010) (quoting Quaranto v. Silverman, 187 N.E. 859, 861 (1963)).  In other words, it is not enough to allege that a defendant acted with bad motive.  Rather, the plaintiff must show that the legal process itself was misused to achieve an improper objective.

Even construing the case in the light most favorable to Plaintiff, and drawing all reasonable inferences in his favor, the Court finds that an abuse of process did not occur here. Hayes challenges the government's use of search warrants, grand jury proceedings, and trial testimony.  However, those legal tools were used for the very purposes for which they exist: investigating alleged criminal conduct, obtaining charges, presenting evidence to a jury, and prosecuting a criminal case.  The criminal proceedings ultimately resulted in a valid jury conviction.

Even assuming *arguendo* Hayes is correct that government officials wished to protect an undercover agent's identity, that motive does not transform the lawful use of legal process into an abuse of process.  Law enforcement routinely seeks to protect the identities of undercover

15

officers because doing so preserves ongoing investigations and protects officer safety.  So long as the legal process is used for its intended purpose, which is to investigate and prosecute alleged criminal conduct, an additional motive does not establish an abuse of process claim.  Freeman v. Town of Hudson, 849 F. Supp. 2d 138, 158–59 (D. Mass. 2012), aff'd, 714 F.3d 29 (1st Cir. 2013) ("[Plaintiff] must establish that process was used 'to accomplish some ulterior purpose for which it was not designed or intended, or which was not the legitimate purpose of the particular process employed.'")  The tort is aimed at situations where legal procedures are diverted from their lawful function and used as a tool to accomplish some unrelated objective.  Hayes alleges no facts plausibly showing that the warrants, grand jury proceedings, or trial process were used for any purpose other than the ordinary prosecution of a criminal case.  Accordingly, he has failed to state a claim for abuse of process.

### b.    Intentional Infliction of Emotional Distress

Hayes' claim for intentional infliction of emotional distress ("IIED") must also be dismissed.  To state an IIED claim, a plaintiff must plausibly allege "(1) that [the defendant] intended, knew, or should have known that his conduct would cause emotional distress; (2) that the conduct was extreme and outrageous; (3) that the conduct caused emotional distress; and (4) that the emotional distress was severe." Galvin v. U.S. Bank, N.A., 852 F.3d 146, 161 (1st Cir. 2017).  Conduct is "extreme and outrageous" only if it is "beyond all bounds of decency and . . . utterly intolerable in a civilized society." Sena v. Commonwealth, 629 N.E. 2d 986, 994 (Mass. 1994).

Here, Hayes' allegations arise from investigative and law enforcement activities undertaken in connection with a criminal investigation and prosecution.  Even accepting Hayes' allegations as true, the conduct described consists of routine police practices, including

investigating suspected criminal activity, gathering evidence, obtaining warrants, making arrests, and participating in the prosecution of criminal charges.  Undercover operations are a long-recognized and lawful investigative technique.  By their nature, such operations often involve deception, concealment of an officer's identity, and covert actions designed to uncover criminal activity.  It is therefore unsurprising that a person who is investigated through undercover means may feel deceived, embarrassed, angry, or emotionally distressed upon learning that the individual with whom he interacted was a law enforcement officer.  Such conduct does not become "extreme and outrageous" merely because it causes emotional distress or results in incarceration.  If the law were, otherwise, nearly every criminal investigation or arrest that caused distress to a suspect could give rise to an IIED claim.

Hayes alleges no facts suggesting that the undercover investigation employed methods so extraordinary or abusive as to meet that demanding standard.  Rather, the Second Amended Complaint challenges the use of investigative techniques that law enforcement is generally authorized to use in criminal investigations.  Even assuming those techniques caused Hayes severe emotional distress, the alleged conduct does not rise to the level of "extreme and outrageous" conduct required to state an IIED claim.  Accordingly, Hayes has failed to plausibly allege an IIED claim.

### c.      Civil Conspiracy

Plaintiff's civil conspiracy claims must also be dismissed.  To adequately plead civil conspiracy, a plaintiff must allege that "(1) there was an agreement between two or more parties and (2) the purpose of the agreement was to accomplish an unlawful objective or to accomplish a lawful objective by unlawful means . . . Civil conspiracy is not an independent basis of liability, but merely a means of establishing joint liability for tortious conduct." W. Rsrv. Life Assur. Co.

17

of Ohio v. Caramadre, 847 F. Supp. 2d 329, 347 (D.R.I. 2012), aff'd sub nom., W. Rsrv. Life Assur. Co. of Ohio v. ADM Assocs., LLC, 793 F.3d 168 (1st Cir. 2015).  Here, Hayes has not satisfied either element of a civil conspiracy claim.

Plaintiff has not alleged an agreement between two or more parties.  Under the intracorporate conspiracy doctrine, employees of the same governmental entity who act within the scope of their employment are treated as a single legal actor and therefore cannot conspire among themselves. See Ortiz v. Inform Diagnostics, Inc., 789 F. Supp. 3d 156, 158 (D. Mass. 2025).  The FBI and the U.S. Attorney's Office ("USAO") are components within the U.S. Department of Justice.  Accordingly, to the extent Plaintiff alleges that FBI or USAO employees conspired with one another in the course of their official duties, those allegations do not state a viable conspiracy claim, since the employees are treated as a single legal actor and thus cannot conspire with one another.

To the extent Hayes instead alleges a conspiracy involving federal agents, local police officers, and state prosecutors, the Second Amended Complaint still fails to identify an unlawful agreement or conspiratorial objective.  The alleged cooperation appears to reflect routine coordination among federal, state, and local law enforcement officials participating in a multi-jurisdictional investigation.  Mere cooperation among separate law enforcement agencies, without plausibly suggesting an agreement to accomplish an unlawful objective, is insufficient to state a civil conspiracy claim. See, e.g., Alston v. Spiegel, 988 F.3d 564, 578 (1st Cir. 2021) ("Vague and conclusory allegations about persons working together, with scant specifics as to the nature of their joint effort or the formation of their agreement, will not suffice to defeat a motion to dismiss.")

18

### d.    Negligence, Negligent Supervision, and Failure to Train

Additionally, Hayes' negligence, negligent supervision, and failure to train claims are barred by the discretionary function exception to the FTCA.  As previously discussed, the discretionary function exception retains the United States' sovereign immunity for claims based upon the exercise or performance, or the failure to exercise or perform, a discretionary function or duty, "whether or not the discretion involved be abused." 28 U.S.C. § 2680(a).  The exception applies where the challenged conduct involves an element of judgment or choice grounded in considerations of social, economic, or political policy.  Conversely, conduct is not discretionary where the Constitution or a federal statute, regulation, or policy specifically prescribes the course of action a government employee must follow. See Limone, 579 F.3d at101.

As the First Circuit has made clear, issues of employee supervision and retention generally involve policy judgments and fall within the discretionary function exception. See, e.g., K.W. Thompson Tool Co., Inc. v. United States, 836 F.2d 721, 728 (1st Cir. 1988) (affirming dismissal of negligent supervision claim because law directing Environmental Protection Agency to develop programs for environmental control invoked use of agency discretion); Attallah v. United States, 955 F.2d 776, 784-85 (1st Cir. 1992) (finding decision whether Customs Service should undertake the level of supervision or surveillance necessary to predict future criminal conduct by agents was policy judgment).  When a plaintiff seeks to hold the United States liable under the FTCA for allegedly negligent hiring, supervision, training, or oversight of federal agents, those claims fall within the discretionary function exception. See, e.g., Gordo-Gonzalez v. United States, 873 F.3d 32, 37 (1st Cir. 2017) ("[W]e have no hesitancy in holding that [supervising an FBI agent] falls squarely within the maw of the discretionary function exception.").  Further, "[w]hen a claim is covered by the discretionary function exception, it

19

must be dismissed for lack of subject matter jurisdiction.". See Kelley v. United States, 924 F.2d 355, 360 (1st Cir. 1991).

Here, Hayes alleges that an undercover federal agent violated his constitutional rights and seeks to hold the United States liable for negligence, negligent supervision, and failure to train. These claims challenge the government's discretionary decisions regarding the supervision and management of its employees. Accordingly, the discretionary function exception applies, so the negligence, negligent supervision, and failure to train claims must be dismissed.

### D.    Issue Preclusion

Finally, Hayes claims are barred by the doctrine of collateral estoppel. The doctrine of collateral estoppel, or issue preclusion, bars a party from relitigating an issue of fact or law that was already litigated and necessarily decided in a prior proceeding, even when the issue is raised in support of a different claim. See Grella v. Salem Five Cent Sav. Bank, 42 F.3d 26, 30 (1st Cir. 1994). The First Circuit has made clear that when a plaintiff's civil claims are based on issues that were essential to a prior criminal judgment, the plaintiff is collaterally estopped from relitigating those issues in a civil case. Cardillo v. Zyla, 486 F.2d 473, 475 (1st Cir. 1973). Here, Hayes' claims are predicated on issues that were resolved in the proceedings leading to his criminal conviction. Accordingly, those issues cannot be relitigated in this action, and dismissal is appropriate.

## V.    CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss [Dkt. 39] is **GRANTED**. Additionally, because the Second Amended Complaint does not allege any plausible basis for relief it is **DISMISSED WITH PREJUDICE.**

20

21

**SO ORDERED.**

Dated: August 5, 2026                                    /s/ Angel Kelley

Hon. Angel Kelley
United States District Judge